IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT SIMMONS, #N10474, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-896-SMY |
| | ) |
| WARDEN LU WALKER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Robert Simmons, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983. He alleges unconstitutional conditions of confinement against Defendant Lu Walker. Now pending before the Court is Walker's Motion for Summary Judgment (Doc. 72), which Simmons opposes (Doc. 76). For the following reasons, the motion is **DENIED**[1].

### Factual Background

The following facts are undisputed unless otherwise noted:[2] At all relevant times, Defendant Lu Walker was the Warden of Shawnee Correctional Center ("Shawnee") (Doc. 1). Plaintiff Robert Simmons was housed in Housing Unit 2, Cell 22 from February 2020 to July 2020 (Doc. 1, pp. 12-13). The ceiling and walls in the cell were covered with mold, paint was peeling from the walls, and there was rust around the vents. *Id*. Simmons cleaned the mold and made

---

[1] Plaintiff also filed a Second Motion to Compel asserting that Defendant moved for summary judgment without producing the supplemental documents this Court ordered her to produce within 10 days following a hearing on February 21, 2023(Docs. 75, 78). Defendant asserts that she did not receive all supplemental documents within the 10-day timeframe set by the Court and mailed the responses on March 28, 2023, along with the response to Plaintiff's motion (Doc. 79). To the extent Plaintiff has not received the supplemental responses, the motion is **GRANTED**.

[2] As no depositions were taken in this case, the undisputed material facts include complaint allegations referenced by Defendant in her motion and supporting memorandum.

several housing unit change requests. *Id*. Maintenance came to his cell and asked whether anything was wrong, and Simmons showed him the peeling bricks and advised maintenance that he cleaned mold from the cell. *Id*. Maintenance never came back. *Id*. Despite his cleaning efforts, mold remained in the cell during the duration of his occupancy. *Id*. No work orders were written concerning mold or safety/sanitation issues during the duration of Simmons' stay in this cell (Doc. 73, pp. 18-26).

Simmons was housed in Housing Unit 1B, Cell 12 from July 2020 to August 2020 (Doc. 1, p. 12). He noticed that this cell was also moldy, had peeling paint, and had standing sewer water in the sink (Doc. 1, p. 14). Simmons told a lieutenant about the issue and requested to be moved. The lieutenant responded that he did not see any mold. *Id*. No work order requests were written concerning the issues with this cell during Simmons' occupancy (Doc. 73, pp. 18-26).

Simmons reported to the healthcare unit with complaints of a non-productive cough on numerous occasions in June and July 2020 (Doc. 73, pp. 27-58). He was assessed as potentially having allergies. *Id*. On July 17, 2020, Simmons advised a nurse practitioner that there was mold in his cell and that he only coughed when lying down on his bunk. *Id*. He was assessed with a cough. *Id*.

Simmons returned to the healthcare unit on July 22, 2020 with complaints of a productive cough. *Id*. He reported experiencing pain on his right side when he coughed and that he believed his cough was caused by his cell. *Id*.

Simmons was seen by healthcare again on July 24, 2020. *Id*. A chest x-ray was ordered. *Id*. Later that day, Simmons reported that he started coughing in bed and got dizzy. When he went to get off the top bunk, he woke up on the ground. *Id*. He was assessed by a nurse and sent to Heartland Regional Medical Center ("Heartland") for further evaluation. *Id*.

Simmons was admitted to Heartland on July 25, 2020 and diagnosed with pneumonia[3], acute hypoxemic respiratory failure, syncope, and head injury (Doc. 1, p. 39).  He was discharged from Heartland on July 26, 2020 and spent the next three days in Shawnee's infirmary.  *Id;* Doc. 73, pp. 27-58.

Simmons filed two emergency grievances in July 2020 while housed in Housing Unit 2, Cell 22 regarding his cell placement and maintenance.  On July 14, 2020, he submitted Grievance No. 2020-07-92 in which he requested to be moved out of his cell:

> "I moved in [Cell 22] on February 9, 2020 and I had to clean (mold) off of the ceiling and walls and when the maintenance worker came around in March and asked me and my cellie if there was anything wrong with the cell I told him yeah the cell needed painting and I showed him the walls in which the paint has come off to the bare bricks which is molded and the vents are peeled and rust is exposed. I haven't been on any medication, and I've been incarcerated since March 29, 2012 and I went to the doctor because I've developed a dry agonizing cough and I don't have a cold…"

Simmons requested to move out of the cell because "there's mold in this cell that's making me sick…and I don't want my health to deteriorate because of this." (Doc. 1, pp. 17-18).  On July 22, 2020, Walker determined that no emergency had been substantiated and directed Simmons to submit the grievance according to standard grievance procedure.  *Id.*

Simmons submitted his second emergency grievance on July 17, 2020 (Grievance No. 2020-07-116):

> I'm writing this grievance because I seen nurse (Peeks) today because of recently acquired respiratory problems she said that it is due to the mold that's in this cell. I've put in several housing unit change request forms, and I've been cleaning this cell to the best of my ability but I'm still coughing uncontrollably due to the presence of mold.  I've been prescribed 4 different kinds of pills because of this problem, and I was not on any medication.  I need to get moved out of this cell because nurse (Peeks) said this problem is not going away as long as I'm in the presence of mold.  I'm forced to live in a cell 23 ½ hours a day.  I didn't have this problem by having movement before Covid 19.  Now I'm being forced to live in a

---

[3] According to the Centers for Disease Control and Prevention ("CDC"), viruses, bacteria, and fungi can all cause pneumonia.  *See* https://www.cdc.gov/pneumonia/causes.html (last visited on May 18, 2023).

moldy cell. I don't get any bleach to clean up with just some watered down green stuff.

Simmons requested to be moved to a mold-free cell (Doc. 1, pp. 19-20). On July 22, 2020, Walker determined that Simmons' grievance was not an emergency and directed him to submit the grievance according to standard grievance procedure. *Id*. Simmons did not submit this grievance to a counselor (Doc. 73, p. 59).

After being moved to housing unit 1B, cell 12, Simmons submitted an emergency grievance (Grievance 2020-08-02) regarding his new cell (Doc. 1, pp. 21-22). He stated that he was recently discharged from the hospital after being "forcefully kept in a mold contaminated cell which highly affected [his] respiratory system." *Id.* He complained that his new cell was worse than the old cell – there was mold, peeling paint, a non-functioning window, and standing water in the sink. *Id.* He cleaned up mold and informed Lieutenant Simon that there was mold in the cell. *Id.* Simmons requested to be placed in a cell "that's livable, mold free with working utilities." *Id*. On August 6, 2020, Walker determined that an emergency was not substantiated and directed Simmons to submit his grievance according to standard grievance procedures. (Doc. 1, pg. 21). Simmons did not resubmit the grievance.

Medical professionals diagnosed Simmons with pulmonary nodules in November 2020 (Doc. 80). In December 2020, Simmons received a biopsy which was positive for adenocarcinoma of the right lung. *Id*. The biopsy also revealed light growth cryptococcus[4]. *Id.* Simmons was advised by his infectious disease physician that cryptococcus can be breathed in and is often opportunistic in patients with lower immune systems such as cancer and HIV (Doc. 82, p. 2).

---

[4] According to the Centers for Disease Control and Prevention, *Cryptococcus neoformans* is a fungus that lives in the environment throughout the world. People can become infected with *C. neoformans* after breathing in the microscopic fungus, although most people who are exposed to the fungus never get sick from it. Most cases occur in people who have weakened immune systems. *See* https://www.cdc.gov/fungal/diseases/cryptococcosis-neoformans/index.html (last visited May 18, 2023).

Simmons received fluconazole for one year to treat the cryptococcus while he underwent treatment for his adenocarcinoma. *Id.; see also* Docs. 81, 82.

## Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue as to any material fact – that is where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the evidence is merely colorable or is not sufficiently probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Two elements are required to establish a constitutional violation. First, an inmate must objectively show that the conditions deny him or her "the minimal civilized measure of life's necessities," thereby creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second element requires proof of a defendant's culpable state of mind – deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Id.* at 842. Establishing that an official acted negligently does not suffice. *Id.* "Instead, the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Townsend, 522 F.3d at 773.* To be held liable under § 1983, supervisors (such as Walker), must "know about the [unconstitutional] conduct and facilitate it, approve it, condone it,

or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010).

Allegations of long-term exposure to mold that causes breathing problems may be sufficient to support an Eighth Amendment claim. *See, e.g., Board v. Farnham*, 394 F.3d 469, 486–87 and n.10 (7th Cir. 2005) (allowing prisoners to pursue their claim that their asthma was worsened by exposure to mold and other substances); *Shehadeh v. Cox*, 2011 WL 2837696, at *5 (S.D. Ill. July 14, 2011) (collecting cases). Here, Simmons asserts that the mold in his cell caused his respiratory issues. Walker argues that Simmons fails to "demonstrate that a sufficiently serious medical condition arose from the conditions of his cells" (Doc. 73, p. 11). Walker further contends that from "February 2020 to August 2020, no medical professional found that mold exposure caused any of Simmons' medical ailments and that while Simmons speculated that mold caused his respiratory issues, the medical records demonstrate that he had pneumonia." *Id*.

A material factual dispute exists as to whether any medical professional has connected Simmons' respiratory conditions to his exposure to mold. Simmons stated in his grievance that Nurse Peek told him that his respiratory issues were caused by the mold (while this is hearsay, presumably, Simmons will call Nurse Peek as a witness at trial). Moreover, Simmons was diagnosed with pneumonia in July 2020, which according to the CDC can be caused by fungi, and was later diagnosed with cryptococcus infection caused by exposure to fungus. Based on this factual record, Simmons has cleared the first hurdle.

Next, Simmons must demonstrate a triable issue of fact on the question whether Walker was deliberately indifferent to his living conditions. Walker asserts that she merely determined that Simmons' grievances were not emergent in nature, that she did not consciously disregard his complaints, and was not constitutionally required to investigate his complaints. Requests for relief

which have fallen on deaf ears can be evidence of deliberate indifference. *See Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997). Simmons does not bear the burden of proving that Walker "acted or failed to act believing that harm actually would befall" him, it is sufficient to show that Walker "acted or failed to act despite knowledge of a substantial risk". *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016). Evidence that the warden "must have known" about the risk of physical or psychological harm resulting from the unsanitary conditions is sufficient for a jury to find deliberate indifference. *Id.; see also Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001).

Simmons filed three grievances in July 2020 detailing his complaints about the mold in his cells and the effects the mold was having on his health. Each of these grievances were signed by Walker. The fact that Walker believed Simmons' complaints to constitute non-emergencies is not enough to insulate her from liability. Rather, signed grievance responses are sufficient to create a triable issue of fact regarding a defendant's knowledge. *See Gray*, 826 F.3d at 1008 (noting that "an inmate's letters to prison administrators may establish a basis for § 1983 liability" where "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety") (cleaned up); *Perez v. Fenoglio,* 792 F.3d 768, 781-82 (7th Cir. 2015). Construing the facts and drawing inferences in the light most favorable to Simmons, the Court finds that Walker is not entitled to judgment as a matter of law.

Alternatively, Walker argues she is entitled to qualified immunity because it was clearly established at the time that (1) she was not personally responsible for the deprivation of Simmons' constitutional rights; (2) the alleged deprivation did not arise to a constitutional violation; and (3) she was not constitutionally required to investigate Simmons' complaints. Prison officials "are

entitled to qualified immunity from liability arising out of conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996). As previously discussed, at the relevant time, it was well established that a warden can be held liable for turning a blind eye to unsanitary conditions of confinement. Accordingly, Walker is not entitled to qualified immunity.

## Conclusion

For the foregoing reasons, Defendant Lu Walker's Motion for Summary Judgment (Doc. 72) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: May 19, 2023**

**STACI M. YANDLE**
**United States District Judge**